## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JUDICIAL WATCH, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 21-2824 (CKK) |
| | ) | |
| U.S. DEPARTMENT OF HOMELAND | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM OPINION
(June 28, 2023)

This Freedom of Information Act ("FOIA") matter is the second of three concerning photos depicting dog bites suffered by Special Agents in the Secret Service's Presidential Protective Detail, caused by the family dog of President Joseph R. Biden, Jr.  The Court first addressed this issue in *Judicial Watch, Inc., v. U.S. Dep't of Homeland Sec.*, Case No. 1:21-cv-01194-CKK (D.D.C. June 28, 2023) ("*Judicial Watch I*"), concluding that Defendant's withholdings complied with FOIA Exemption 7(C).  The Court confronts the same question here.  Seeing no material differences between these two cases, and upon consideration of the pleadings,[1] the relevant legal authority, and the entire record, the Court shall **GRANT**

---

[1] The Court mainly considered:
- Defendant's Memorandum of Points and Authorities in Support of Motion for Summary Judgment ("MSJ"), and attachments, ECF No. 14;
- Plaintiff's Memorandum in Opposition to Motion for Summary Judgment ("MSJ Opp."), and attachments, ECF No. 15;
- Plaintiff's Cross-Motion for Summary Judgment ("Cross MSJ"), and attachments, ECF No. 16;
- Defendant's Reply to MSJ Opp. ("Reply to MSJ Opp."), and attachments, ECF No. 17;
- Defendant's Response to Cross MSJ ("Response to Cross MSJ"), and attachments, ECF No. 18; and

Defendant's [14] Motion for Summary Judgment and **DENY** Plaintiff's [16] Cross-Motion for Summary Judgment.

## I. BACKGROUND

No material facts are in dispute. *See* Cross MSJ at 2. On July 29, 2021, Plaintiff submitted a FOIA request to the Secret Service seeking records related to the First Family's dogs. *See* Declaration of Kevin L. Tyrrell ("Tyrrell Decl."), ECF No. 14-3, ¶ 5. This was Plaintiff's second FOIA request to the Secret Service related to this subject matter. *Id.* The two requests are materially identical. The second request, at issue here, asked for additional photos from late February and early March 2021, based upon additional news reports that the First Family's dog, Major, was aggressive towards two different Secret Service Agents while the Agents were working at the First Family's private residence in Delaware and the White House. *See* Statement of Undisputed Material Facts ("SUMF"), ECF No. 14-1, ¶ 8-9; Tyrrell Decl. ¶ 12, 16-23. The six photographs at issue in this dispute were taken to document the resulting injuries. SUMF ¶ 10; Tyrrell Decl. ¶ 16. These photographs do not contain the injured Special Agents' faces, but they do show their skin color and some portions of their unclothed forearm or unclothed thigh and knee. SUMF ¶¶ 11-15; Tyrrell Decl. ¶¶ 17-19, 22-23.

Secret Service managers emailed three of the photographs (USSS-0012, USSS-0014, and USSS-0248) to themselves or other managers, and another Special Agent emailed the remaining three photographs (USSS-0241, USSS-0243, USSS-0252) to the Administrative Operations Manager, who had requested documents related to Plaintiff's earlier FOIA request. SUMF ¶¶ 16-

---

- Plaintiff's Reply to Opposition to Cross Motion ("Reply to Opp. Cross MSJ"), and attachments, ECF No. 19.

In an exercise of its discretion, the Court has concluded that oral arguments would not assist in the resolution of this matter.

20; Tyrrell Decl. ¶¶ 17-24. This Special Agent also emailed these photos to the email lists for the Secret Service's Presidential Protective Division and the officers in the Uniformed Division, White House Branch. SUMF ¶ 19; Tyrrell Decl. ¶¶ 20-21. Despite the photographs being circulated via email, not all Secret Service Agents or White House employees know the identity of the injured Special Agents. *See* SUMF ¶ 27c; Tyrrell Decl. ¶ 25. Ultimately, the Secret Service withheld all six photographs pursuant to FOIA Exemptions b(6) and b(7)(C), 5 U.S.C. § 552. SOF ¶ 7; Tyrrell Decl. ¶ 12.

## II.  LEGAL STANDARD

Summary judgment is appropriate when the pleadings and evidence "show[] that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of . . . the affidavits . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (internal quotation marks omitted).  A genuine issue of material fact is one that "might affect the outcome of the suit under the governing law . . ." *Anderson*, 477 U.S. at 248.

"[T]he vast majority of FOIA cases can be resolved on [motions for] summary judgment . . ." *Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011). Summary judgment in a FOIA case may be granted to an agency if it demonstrates that no material facts are in dispute, that it has conducted an adequate search for responsive records, and each responsive record that it has located either has been produced to the plaintiff or is exempt from disclosure. *See Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980).

Defendant's position is supported by the Declaration of Kevin L. Tyrrell. *See* Tyrrell Decl. The submission of an agency declaration that describes the withheld material with reasonable specificity, as well as the reasons for nondisclosure, may satisfy the Government's burden. *See Campbell v. U.S. Dep't of Justice,* 164 F.3d 20, 30 (D.C. Cir. 1998). The justifications cannot be "conclusory, merely reciting statutory standards, or . . . too vague or sweeping." *King v. U.S. Dep't of Justice,* 830 F.2d 210, 219 (D.C. Cir 1987) (internal citations omitted). However, "summary judgment may be granted solely on the basis of agency affidavits provided that they are clear, specific, and reasonably detailed, and there is no contradictory evidence . . . of agency bad faith." *W. Ctr. for Journalism v. Internal Revenue Serv.,* 116 F. Supp. 2d 1, 7 (D.D.C. 2000) (citing *Hayden v. Nat'l Sec. Agency,* 608 F.2d 1381, 1387 (D.C. Cir. 1979)).

### III. DISCUSSION

As in *Judicial Watch I,* Defendant asserts that even though the photographs do not reveal the Special Agents' faces, they nonetheless could identify the Special Agents because the photographs show skin tone and portions of their bodies, and because the universe of personnel providing protection to the President and his family is small.  Tyrrell Decl. ¶ 25.  Defendant also contends that the Special Agents have a substantial privacy interest in not being identified as the people who were bitten.  *See id.* ¶¶ 25-26.  Moreover, with respect to those who already know who was bitten or could learn it from looking at the photographs, Defendant argues that the Agents retain a privacy interest in the pictures themselves, which depict injuries and portions of their bodies. *Id.*

Conversely, Plaintiff asserts that it seeks the withheld photographs of the Special Agent's injuries "to confirm, or not, statements by the Administration regarding these incidents,"

contending that the "public has a vital interest in being able to rely on the official statements of high-level government officials."  MSJ Opp. at 1.  Plaintiff claims further that "the public interest in the withheld photographs is significant as the public has an interest in understanding the degree of danger to which Secret Service personnel are exposed and the apparently significant injuries that occur in the line of duty.  While written records may describe an injury, photographic evidence will shed significant additional light on the matter."[2]  *Id.* at 4.

In an Exemption 7(C) analysis, the Court must first determine if there is a privacy interest in the information to be disclosed.  *ACLU v. U.S. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011) If so, then Court must balance the individual's privacy interest against the public interest in disclosure, considering only the extent to which disclosure "further[s] the citizens' right to be informed about 'what their government is up to.'"  *Id.*  (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press,* 489 U.S. 749, 773 (1989) (internal quotation marks omitted)); *see also Roth v. U.S. Dep't of Justice,* 642 F.3d 1161, 1174-75 (D.C. Cir. 2011). "[B]oth the common law and the literal understandings of privacy encompass the individual's control of information concerning his or her person."  *U.S. Dep't of Justice v. Reporters Comm. For Freedom of the Press,* 489 U.S. 749, 763 (1989).  That concept is not limited to only those

---

[2] Six news reports are cited by Plaintiff to evidence the public's interest.  Three were within a month of the second incident; the remainder were all in the context of a White House press conference question in late August, some five months later. *See* Dareh Gregorian & Lauren Egan, *'Minor' Major issues: Emails show Biden dog was nippier than White House said*, NBC NEWS (Aug. 27, 2021) (MSJ Opp., Ex. A); Katie Jerkovich, *Reporter Asks Psaki How People Can Trust Administration On Afghanistan If They're Hiding White House Dog's Biting Spree*, DAILY CALLER (Aug. 27, 2021) (MSJ Opp., Ex. B); *'Major' pain: Biden's dog involved in 2nd biting incident*, ASSOCIATED PRESS (Mar. 30, 2021) (MSJ Opp., Ex. C); Steve Nelson, *Biden's dog Major bit Secret Service members 8 days in row, emails show*, NEW YORK POST (Aug. 26, 2021) (MSJ Opp., Ex. D); Michael Kruse, *'It's Not the Dog': What's Really Behind the White House Dog's Biting Problem*, POLITICO (Apr. 5, 2021) (MSJ Opp., Ex. E); *PREZ BIDEN'S DOG MAJOR WHITE HOUSE DOWNPLAYED VICIOUSNESS . . . Dog Attacked 8 Times, Once Severely,"* TMZ (Apr. 14, 2022) (MSJ Opp., Ex. F).

records that the public writ large could identify as applying to a particular person. *See Dep't of Air Force v. Rose*, 425 U.S. 352, 380 (1976) (identifying information is measured "not only from the viewpoint of the public, but also from the vantage of those . . . familiar" with the person implicated).

A law enforcement officer's identity often implicates a privacy interest in FOIA cases.[3] Here, two privacy interests are at issue:  (1) the Special Agents' interests in not being identified as the people who were bitten at work, and (2) the Special Agents' interests in the photographs themselves, which show injuries to their bodies.  *See* Tyrell Decl, ¶¶ 25-27.  Plaintiff counters that these privacy interests are eroded because it is "already likely well known among Secret Service personnel as to who has been injured" given that some of the photographs were sent to the email lists for the Secret Service's Presidential Protective Division and the officers in the Uniformed Division, White House Branch. MSJ Opp. at 2; Tyrell Decl. ¶ 20.  Not only do not all Secret Service Agents or White House employees know the identity of the injured Special Agents, but limited disclosure also cuts against Plaintiff, because it would be marginally easier for members of the public generally to identify the Special Agent.  *See* Tyrell Decl. ¶¶ 25-27; *Reporters Comm.*, 489 U.S. at 770 ("In sum, the fact that an event is not wholly private does not mean that an individual has no interest in limiting disclosure or dissemination of the

---

[3] *See, e.g., Ecological Rts. Found. v. U.S. Env't Prot. Agency*, 541 F. Supp. 3d 34, 43 (D.D.C. 2021) (BAH) (holding protective agents' identities, by virtue of their work, were sufficient to establish an unwarranted invasion of privacy under Exemption 7(C)); *Pinson v. U.S. Dep't of Justice*, 313 F. Supp. 3d 88, 115–16 (D.D.C. 2018) (RC) ("[I]njuries and other medication information" of the Federal Bureau of Prisons staff was exempt from disclosure under Exemption 7(C)); *Coleman v. FBI*, 13 F. Supp. 2d 75, 79–80 (D.D.C. 1998) (RCL) (holding FBI agents' identities were exempted to  protect personal privacy as against harassment and annoyance); *Kuffel v. U.S. Bureau of Prisons*, 882 F. Supp. 1116, 1123-25 (D.D.C. 1995) (RMU) (holding law enforcement officers' identities exempted from disclosure); *Watson v. U.S. Dep't of Justice,* 799 F. Supp. 193, 197 (D.D.C. 1992) (holding protection of agents justifies exemption on their identities).

information." (cleaned up)); *see also, e.g.*, *Rose*, 425 U.S. at 380-81 (identifying information is measured not only from the "viewpoint of the public, but also from the vantage of those . . . familiar" with the person implicated); *Yelder v. U.S. Dep't of Def.,* 577 F. Supp. 2d 342, 346 (D.D.C. 2008) (RJL) (intimate photographs "create a more palpable threat to privacy than a name or an address."). The Special Agents thus have demonstrated a privacy interest both in their identity and in the disclosure by photograph of parts of their bodies.

Turning to balancing, "[i]t is a FOIA requester's obligation to articulate a public interest sufficient to outweigh the individuals' privacy interest, and the public interest must be significant." Pinson v. U.S. Dep't of Justice, 236 F. Supp. 3d 338, 367 (D.D.C. 2017) (RC) (citing *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004)); *see also Lindsey v. FBI*, 490 F. Supp. 3d 1, 16 (D.D.C. 2020).

Plaintiff's articulation of the public's significant interest in the photographs is not compelling. Released emails contain descriptions of the incidents, which disclose the extent of the injuries sustained. MSJ, Ex. 3-6. Moreover, the relevant inquiry "should focus not on the general public interest in the subject matter of the FOIA request, but rather on the incremental value of the specific information being withheld." *Schrecker v. U.S. Dep't of Justice,* 349 F.3d 657, 661 (D.C. Cir. 2003). Nor does disclosure of the photographs add significant additional light to the public's understanding of these minor incidents from more than two years ago. Plaintiff's mere recitation that disclosure would be significant does not "articulate a public interest sufficient to outweigh an individuals' privacy interest." *See Lindsey*, 490 F. Supp. 3d at 18; *see also Pinson,* 236 F. Supp. 3d at 367. As such, Plaintiff does not meet its burden in articulating why the photographs would address a significant public interest sufficient to outweigh the Special Agents' privacy interests.

Plaintiff also maintains that the "public interest in this matter is easily demonstrated by the media attention it has received" and cites six media reports about the dog bites. MSJ Opp. at 4-5; *see* n.2 *supra.*  But the mere existence of media reporting on a minor news story of fleeting interest is not itself determinative.  *See Reporters Comm.*, 489 U.S. at 774 ("Conceivably [the withheld document] would provide details to include in a news story, but, in itself, this is not the kind of public interest for which Congress enacted the FOIA.").  The public interest is instead measured by whether disclosure "would shed light on an agency's performance of its statutory duties[] or otherwise let citizens know what their government is up to." *See Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Just. ("CREW")*, 746 F.3d 1082, 1093 (D.C. Cir. 2014) (cleaned up); *see also ACLU*, 655 F.3d at 6; *Lindsey*, 490 F. Supp. 3d at 18.  It is the Court's view that the prurient interest in viewing photographs of the Special Agents' injuries does not implicate either the Secret Service's performance of its statutory duties or shed light on what the government is "up to," but rather constitutes unwarranted invasion of privacy under Exemption 7(C).  *See CREW*, 746 F.3d at 1093.

## IV. CONCLUSION

Just as in *Judicial Watch I*, Plaintiff here has failed to demonstrate any compelling public interest against which the Court might balance the privacy interest of the Special Agents. Absent some demonstration of meritorious public interest supporting disclosure, a privacy invasion of this nature is unwarranted.  Therefore, and for the foregoing reasons, the Court **GRANTS** Defendant's [14] Motion for Summary Judgment and **DENIES** Plaintiff's [16] Cross-Motion for Summary Judgment.  An appropriate order accompanies this Memorandum Opinion.

Dated: June 28, 2023                                  /s/
                                                COLLEEN KOLLAR-KOTELLY
                                                United States District Judge